UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ADAM COX, and KIMBERLY COX, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-117-CVE-JFJ |
| | ) | |
| SWIFT TRANSPORTATION CO. OF ARIZONA, LLC, and SAI WAI, | ) ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS ADAM AND KIMBERLY COX'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE 37 FOR DEFENDANT SWIFT'S SPOLIATION OF EVIDENCE**

COMES NOW Plaintiffs, Adam Cox and Kimberly Cox (hereinafter "Plaintiffs"), and, pursuant to Fed.R.Civ.P. 37(e) and this Court's inherent authority, and respectfully moves this Court for just relief to include a directed verdict on liability, or in the alternative, an adverse inference jury instruction due to the spoliation of evidence by Defendant Swift Transportation Co. of Arizona (hereinafter, "Defendant Swift"). In support of this Motion, Plaintiffs allege and state as follows:

## INTRODUCTION

Before the Court is Plaintiffs' request for an adverse inference jury instruction. Plaintiffs seek the same because critical evidence has been destroyed by Defendant Swift. Swift Trucks are commercial motor vehicles ("CMVs") equipped with state-of-the-art technology designed to record and document critical vehicle performance data that would be relevant in a significant accident. Defendant Swift admits that it does not have this data.

1

Federal regulations require the preservation of this evidence. Swift policies require it. Plaintiffs' preservation letter demanded it. Yet, the evidence has not been produced.

Before this lawsuit was filed, Plaintiffs' counsel sent a spoliation letter to Defendant Swift requesting preservation of specific documents and other data, including 1) driver logs, 2) driver hours of service records, 3) Electronic Control Module ("ECM") data, 4) Qualcomm and Omnitracs data, and 5) Critical Event Reports ("CER") data. See Exhibit 1, October 17, 2017 Spoliation Letter. Upon the commencement of litigation, Plaintiffs sought to obtain the information through discovery. All of this data is commonly kept in the trucking industry, especially when there is an accident resulting in personal injuries and property damage. Swift's own retention policy dictates that it be retained. See Exhibit 2, Defendant Swift's Responses to Plaintiff Adam Cox's First Request for Production, Bates No. D 000778.

To date, Defendant has not produced relevant Driver Logs, Qualcomm or ECM data and other relevant digital evidence, pursuant to Plaintiffs requests. Defendant Swift asserts that it did not download and/or maintain any of the documents or data after the collision and the data is no longer available. See Exhibit 2, Defendant Swift's Responses to Plaintiff Adam Cox's First Request for Production, No. 27 ("no downloads of data were obtained and are thus not subject to retrieval"). Defendant's communications system provider, Omnitracs, has also denied Plaintiffs access to the data, if any currently exists. See Exhibit 4, Omnitracs Letter. Defendant's conduct in destroying or not maintaining this critical data is a serious violation of the Federal Rules of Civil Procedure and basic discovery requirements that has severely hindered Plaintiffs' ability to prove their claims and has

denied the trier of fact of valuable, probative evidence in making a fair and reasonable determination of liability. Swift's conduct has risen to the level of impropriety worthy of an adverse inference jury instruction regarding what the evidence would have shown.

## **RELEVANT FACTS FOR SPOLIATION ISSUE**

1. In the early morning of July 31, 2017, Plaintiff Adam Cox was operating a commercial motor vehicle (hereinafter CMV) on the Will Rogers Turnpike near Vinita, OK when his CMV collided with Defendant Swift's CMV.

2. At the time of the collision, Swift's CMV was being operated by Defendant Wai.

3. The crash caused Plaintiff Adam Cox severe personal injuries. Swift had knowledge of this fact as little as two hours after the collision. Exhibit 5, Deposition of Bill Peyton, 67:2-13. Adjusters were on the scene within minutes.

4. Swift trucks are outfitted with cutting edge technology, including tracking systems, that provide data relative to how the trucks are being operated. See Exhibit 5, Deposition of Bill Peyton, 28:8-32:6. The specific CMV had Qualcomm, Omnitracs and an ECM.

5. Defendant Wai testified that he input a "Macro" code 55 into the Qualcomm system after the collision, signalling to Defendant Swift that he had a "breakdown" for what he thought was a blown tire at the time of accident. See Exhibit 6, Deposition of Sai Wai, 113:1-6 and 117:15-22.

6. On October 17, 2017, seventy-eight (78) days after the crash, Plaintiffs' counsel sent a Preservation Letter to Defendant Swift, wherein specific documents and data were requested to be preserved. Included in these requests were all driver logs and all on-board computer reports. See Exhibit 1, Spoliation Letter.

7. On July 20, 2018, Defendant Swift Responded to Plaintiff Adam Cox's Requests for Production. Therein, Defendant admitted that driving logs, hours of service logs, ECM data and Qualcomm data were not maintained after the crash. See Exhibit 2, Defendant Swift's Responses to Plaintiff Adam Cox's First Request for Production, Nos. 21 & 27.

8. Plaintiffs have attempted to obtain the ECM and Qualcomm Data from Omnitracs, Defendant Swift's third-party electronic data platform provider, to no avail. See Exhibit 3, Omnitracs Subpoena and Exhibit 4, Omnitracs Letter.

9. On May 2, 2019, Defendant Swift's Regional Safety Director Bill Peyton testified that the ECM data and Qualcomm data could have been retrieved and preserved at the time of the accident. See Exhibit 5, Deposition of Bill Peyton, 67:2-68:10.

10. Mr. Peyton also agreed that driver logs from the day of the accident would be important, but he cannot answer why they are missing. See Exhibit 5, Deposition of Bill Peyton, 69:19-24, 71:17-24 and 73:20-22.

11. Prior to this collision, Defendant Wai was involved in (11) eleven "incidents" while operating a Commercial Motor Vehicle for Defendant Swift; six of which Swift's safety manager defines as "at-risk" driving behavior. See Exhibit 11, Summary of Defendant Wai's Driving History and Exhibit 5, Deposition of Bill Peyton, 194:3-11.

12. Despite the severity of the collision, Defendant Wai drove away from the accident in the Swift truck and went on to complete his delivery before quitting his job with Swift a few days later. Swift never asked him to retain any data or logs from the date of the collision. See Exhibit 6, Deposition of Sai Wai, 79:22-81:23 and 65:19-25.

13. Defendant Swift's own document retention policy requires the preservation of all documents, records and information relevant to threatened or pending lawsuits. See Exhibit 2, Defendant Swift's Responses to Plaintiff Adam Cox's First Request for Production, Bates No. D000778.

14. Plaintiffs' expert Roger Allen testified that the data would show what happened with the Swift truck that night and that Swift is the only one that had control of the equipment to download the data. See Exhibit 10, Deposition of Roger Allen, 137:16-138:13.

## ARGUMENT & AUTHORITY

Spoliation is defined as "[t]he destruction of evidence." *Patel v. OMH Med. Ctr., Inc.*, 1999 OK 33, 987 P.2d 1185, 1202 (Okla. 1999). "Spoliation occurs when evidence relevant to prospective litigation is destroyed, adversely affecting the ability of a litigant to prove his or her claim." *Id.* Oklahoma recognizes the existence of an adverse presumption that follows the destruction or spoliation of evidence. *Harrill v. Penn*, 134 Okla. 259 (1929). The presumption arises "if it is shown that a person has attempted to ... suppress or destroy evidence, [because] such conduct may be justly construed as an indication of his consciousness that his case or defense is lacking in merit." *Id.*

Drivers' logs, drivers' hours of service records, ECM data, Qualcomm data and CER data are highly relevant to this litigation. See Exhibit 5, Deposition of Bill Peyton, 165:1-168:1. The Federal Motor Carrier Safety Act imposes on Defendant Swift the duty to preserve drivers' logs, drivers' hours of service records, ECM data, and Qualcomm and Omnitracs data for its vehicles and drivers involved in major trucking collisions. 49 C.F.R. § 395.8(k)(1) Defendant Swifts' spoliation is all the more egregious in light of the notice

5

given by Plaintiffs' preservation letter. By failing to secure and preserve the information and data, Defendant Swift has deprived Plaintiffs of critical, material evidence that would assist the trier of fact in determining the ultimate issues at bar. Plaintiffs ask the Court at a minimum, to give the jury an adverse inference instruction whereby the jury may infer that the now-destroyed evidence contained information that unfavorable to Defendant Swift. This adverse inference instruction is the only just remedy where a party allows the destruction of evidence: ". . . destruction of evidence without a satisfactory explanation gives rise to an inference unfavorable to the spoliator." *Manpower v. Brawdy,* 62 P.3d 391, 392 (OK CIV APP 2002) (quoting *Brown v. Hamid,* 856 S.W.2d 51, 57 (Mo. 1993).

## THE SPOLIATED EVIDENCE

"Swift is unquestionably the largest full-truckload motor carrier in North America."[1] According to Swift's Regional Safety Director Bill Peyton, Swift has anywhere from 13,000 to 15,000 truck drivers on the road. Its trucks are equipped with the most advanced technology that makes communication, monitoring safety and ensuring compliance with all laws and regulations easier than ever before. According to Swift's own website, "From day one, safety has been the highest priority at Swift Transportation. Safety for our employees, customers and motoring public will always remain our primary focus in all the policies, procedures and programs that govern our business."[2]

Defendant Swift's "highest priority" is furthered by the technology it utilizes in all of its commercial motor vehicles. Qualcomm and Omnitracs systems provide

---

[1] Source: https://www.swifttrans.com/who-we-are/history
[2] Source: https://www.swifttrans.com/who-we-are/safety-and-security

6

communication, including "Macro" codes sent directly to Defendant Swift when a driver needs to inform it of events such as a breakdown or collision. Electronic Control Modules ("ECMs") document and store vital data regarding the operation of the CMV. Swift utilizes electronic logs that document how long, and who, is driving its vehicles. Additionally, Defendant Swift employs systems that document Critical Event Records ("CERs"). These systems record even more specific data during a hard-braking event, when the truck is following too closely, or the driver loses control. This is done not only for litigation purposes or corporate analysis, but to help drivers improve their driving skills and abilities to perform their job safely and within the rules of the road. The data at Swift's disposal, when preserved, can provide critical evidence of what occurred during a collision.

Destroying data is not new at Swift. Defendant Swift has been sanctioned with an adverse inference instruction for spoliation of evidence in other cases. See *Baker v. Swift Transportation Co. of Arizona, LLC*, 2018 WL 2088006 (S.D. Ohio) and *Swift Transportation Co. of Arizona, LLC v. Angulo*, 716 F.3d 1127 (8th Cir., 2013).

The Federal Motor Carrier Safety Regulations, or "FMCSR's" regulate and/or control motor carriers, drivers, and commercial motor vehicles, which transport property or passengers in interstate commerce. 49 C.F.R. § 390.3(a). With a few exceptions, every employer is required to be knowledgeable and comply with all regulations, to instruct all drivers and employees regarding applicable regulations, and to ensure that all motor vehicle equipment and accessories are maintained in compliance with applicable regulations. 49 C.F.R. § 390.3(e). Defendant Swift does not fall under any of the exceptions. Under the FMCSR's, a motor carrier is required to ensure compliance with any duty or prohibition

imposed upon its drivers by the regulations. 49 C.F.R. § 390.11. Further, the motor carrier's obligation or duty to ensure its drivers' compliance with the applicable FMCSR is non-delegable. To comply with these minimum requirements, Swift utilizes the aforementioned Qualcomm/Omnitracs system.

### Drivers' Logs and Drivers' Hours of Service Records

Pursuant to FMCSR §§ 395.3 and 395.8, a motor carrier is obligated to regulate a driver's hours of operation and to use specific methods to record a driver's "duty status." These include both drivers' logs and hours of service records and must be maintained *at minimum* six months after the date of receipt. 49 C.F.R. § 395.8(k)(1). In this case, drivers' logs and hours of service would show exactly who was driving the Defendant Swift Truck on July 31, 2017 when the crash occurred. Yet, Swift has stated that the documents, specifically logs for July 31, 2017, were not maintained and are no longer available. See Exhibit 2, Defendant Swift's Responses to Plaintiff Adam Cox's First Request for Production, No. 21. Defendant Wai has testified that he input data for the logs on the day of the accident as required, yet even he does not know where they are. See Exhibit 6, Deposition of Sai Wai, 81:9-23.

### ECM Data, Qualcomm and Omnitracs Data and CER Data

An Electronic Control Module, or "ECM," is essentially the brain of modern motor vehicles, including commercial motor vehicles. The ECM is a computer that receives and stores data regarding the functions of a variety of mechanical and electrical components used by the vehicle. It can record data like speed, what gear the truck is in, and what lights

8

were on. When a "critical event" occurs, such as hard braking or a sudden drastic change in speed, a Critical Event Report ("CER") is created. See Exhibit 9, Omnitracs CER.

Likewise, Qualcomm and Omnitracs are an on-board electronic communication systems used to relay messages between drivers and motor carrier terminals. Qualcomm can relay an endless variety of messages, in the form of "Macros," ranging from "free form messages" to donating wages to charity. See Exhibit 7, Qualcomm Macros. An example of two relevant Macros to the present litigation, a "55" or "Breakdown" and a "52" or "Accident Macro" are also attached. See Exhibit 8, Macro Forms. The system functions as the voice of the driver to the company. These must also be maintained for at least six months after the date of receipt. 49 C.F.R. § 395.8(k)(1). However, Swift has stated that none of this data was downloaded or retained after the collision and is no longer retrievable. See Exhibit 2, Defendant Swift's Responses to Plaintiff Adam Cox's First Request for Production, No. 27. Swift violated its duty without explanation.

### DEFENDANT HAD A DUTY TO PRESERVE THE EVIDENCE

"[Ordinarily] the duty to preserve evidence is triggered by the filing of a lawsuit. However, the obligation to preserve evidence may arise even earlier if a party has notice that future litigation is likely." *Cache La Poudre v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 621 (D.Colo.2007) (internal quotations and citations omitted). "[T]he duty 'may arise from statutes, regulations, ethical rules, court orders, or the common law… a contract, or another special circumstance." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D 497 (D.Md. Sept. 9, 2010) (citing 37 U. Balt. L. Rev. 381, 390 (2008))).

9

"It is well established that the duty to preserve evidence arises when a party reasonably anticipates litigation. Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a litigation hold to ensure the preservation of relevant documents." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F.Supp.2d 456, 466 (S.D.N.Y.2010) (internal citations and quotations omitted). The duty to preserve means action must be taken to preserve evidence, meaning that it is not lost, destroyed, inadvertently or negligently overwritten, or intentionally wiped out, and that it is available to be produced to the other side. See *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422 (S.D.N.Y.2004).

Defendant Swift knew within minutes of the collision, that Adam Cox had suffeed significant bodily injury, his semi-truck was a total loss and the Swift trailer would be towed. Litigation was immediately foreseeable and retention of records regulations exist for these very reasons. The spoliated evidence would undoubtedly have probative value to a trier of fact. The jury can never receive that evidence as a result of Swift's willful refusal to comply with its internal policy and the federal regualtions. Failure to do so flies in the face of the judicial systems demand for fairness and due process. Adam Cox cannot obtain this data from any other source, but Swift.

### **NEGLIGENT VERSUS INTENTIONAL DESTRUCTION OF EVIDENCE**

"Spoliation includes the intentional or negligent destruction or loss of tangible and relevant evidence which impairs a party's ability to prove or defend a claim." *U.S. v. Koch Industries, Inc.*, 197 F.R.D. 463, 482 (N.D. Okla. 1998). Pursuant to Rule 37 of the Federal Rules of Civil Procedure, if electronic information that should have been preserved in the anticipation or conduct

of litigation is lost or destroyed, the Court may order measures to cure the prejudice to the party requiring the information. If, however, the information is lost or destroyed intentionally to deprive the other party of the same, the Court may "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment." Fed. R. Civ. P. Rule 37(e)(2)(A-C). Here, a jury instruction to presume the information was unfavorable to Swift is the appropriate sanction.

## REMEDIES FOR SPOLIATION

Sanctions for spoliation of evidence are appropriate when (1) a party had a duty to preserve the evidence because it knew, or should have known, that litigation was imminent, and (2) the other party was prejudiced by the destruction of the evidence. *Turner v. Public Service Co. of Colorado*, 563 F.3d 1136, 1149. The burden is on the moving party to prove, by a preponderance of the evidence, that the opposing party failed to preserve evidence or destroyed it. See *In re Krause*, 367 B.R. 740, 764 (D.Kan.2007). Additionally, "Courts must take care not to 'hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence,' because doing so 'would subvert the . . . purposes of the adverse inference, and would allow parties who have . . . destroyed evidence to profit from that destruction.'" *Essenter*, 2011 WL 124505 (quoting *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 109 (2d Cir. 2002)).

"District courts enjoy 'very broad discretion to use sanctions where necessary to insure . . . that lawyers and parties . . . fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial.'" *Lee v. Max Intern., L.L.C.*, 638

11

F.3d 1318 (10th Cir. 2011) (citing *In re Baker*, 744 F.2d 1438, 1440 (10th Cir.1984) (en banc)). "The district court's active participation in the discovery motions practice affords it a superior position than we — with but a cold record to review — for deciding what sanction best fits the discovery 'crime,' both as a matter of justice in the individual case and 'to deter [others] who might be tempted to [similar] conduct.'" *Lee* at 1320 (citing *Nat'l Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639 643 (1976)).

A determination of the correct sanction for a discovery violation is a fact-specific inquiry. See *Phillips Electronics North America Corp. v. BC Technical*, 773 F.Supp.2d 1149, 1210 (D.Utah 2011). The court must consider a number of factors, particularly the five set forth by the Tenth Circuit in *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir.1992). [Id]. "The five *Ehrenhaus* factors are: "(1) [T]he degree of actual prejudice to the [party]; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." *Ehrenhaus*, 965 F.2d at 921 (citations omitted). The factors are not a rigid test, but instead criteria a court should consider before imposing dismissal as a sanction. *Id*. Plaintiffs are requesting the Court issue an appropriate sanction and at a minimum, grant an adverse interference instruction to assist the jury in the weight to give the spoliated records.

In determining the appropriate sanction, the Court should examine the *Ehrenhaus* factors. 1) Plaintiffs are limited to biased self-serving testimony regarding the Defendant Wai's speed, the mechanical condition of the truck immediately prior to impact, or even who was operating the vehicle. The destroyed evidence would provide all of this

12

information and more. Clearly, Plaintiffs have been severely prejudiced by the destruction of this evidence. 2) As the documents and data were already destroyed, according to Swift, by the time this lawsuit was filed. Taking Swift at its word, a request of this Court to compel would be fruitless. 3) Swift, at all times, maintained dominion and control over the evidence requested. Swift is under a duty to maintain and retain such critical evidence as required by federal law, Swift's own retention policies, and upon reasonable notice of a claimants preservation letter. Swift has yet to provide any explanation, let alone a legal justification for its failure to comply with this duty. Having been sanctioned by courts in the past, Swift cannot claim ignorance and therefore it is reasonable to assume the decision to not retain documents was a calculated one. In the cost benefit analysis, Swift chose to willfully fail to preserve or maintain valuable data of persuasive and highly probative value. 4) Although Plaintiffs do not object to a dismissal or a directed verdict on the issue of liability, the Court has not been asked to compel the evidence because all of the evidence suggests it was destroyed long before discovery began. 5) This factor inherently demonstrates that sanctions less than dismissal or default judgment can be effective to deter future misconduct and provide prejudiced parties with relief. This Court has broad discretion to impose sanctions against attorneys and parties when they neglect their duty of expeditious and sound management of case preparation. *Lee v. Max Intern., L.L.C.*, 638 F.3d 1318 (10th Cir. 2011) (citing *In re Baker*, 744 F.2d 1438, 1440 (10th Cir.1984) (en banc)). This includes the duty to preserve relevant evidence. In this case, all of the requested documents and electronic data are incredibly relevant to the trier of fact and

would be necessary to prove the elements of the claims and to effectively determine liability.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request this Court to grant the following relief a) a directed verdict on the issues of liability in favor of Plaintiffs or b) instruct the jury on adverse presumption regarding the spoliated evidence.

Respectfully submitted,

/s/ Jim Buxton
Jim Buxton, OBA #19057
Buxton Law Group
1625 N. Classen Blvd.
Oklahoma City, OK 73106
Telephone – (405) 604-5577
Facsimile – (405) 604-5578
jim@buxtonlawgroup.com

and

/s/Jacquelyn Ford
Jacquelyn Ford, OBA #21179
Ford Law
1621 N. Classen Blvd.
Oklahoma City, OK 73106
Telephone – (405) 604-3200
Facsimile – (405) 239-2595
jacqui@fordlawokc.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 20 day of June 2019, I electronically transmitted the attached document to the following counsel of record:

Robert P. Coffey
Timothy S. Harmon, Sr.
Robert E. Applegate
Coffey Senger & McDaniel, PLLC
4725 East 91st Street, Suite 100
Tulsa, OK 74137
robert@csmlawgroup.com
tim@csmlawgroup.com
applegate@csmlawgroup.com

Keith Russell Breechen
Johnson Hana & Vosler
9801 N. Broadway Ext.
Oklahoma City, OK 73114
kbreechen@johnsonhanan.com

Stephen A. Smith
Matthiesen, Wickert & Lehrer, SC
1111 East Summer Street
P.O. Box 27060
Hartford, WI 53027-0670
ssmith@mwl-law.com

/s/ Jim Buxton
Jim Buxton