**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **ADAM COX; and KIMBERLY COX,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No. 18-CV-117-CVE-JFJ** |
| **v.** | ) | |
| | ) | |
| **SWIFT TRANSPORTATION CO. OF** | ) | |
| **ARIZONA, LLC; SAI WAI; and PYAE** | ) | |
| **MAUNG,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Before the Court are Plaintiffs' Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 37 for Defendant Swift's Spoliation of Evidence (ECF No. 88) and Defendants' Motion for Sanctions for Plaintiffs' Spoliation of Evidence (ECF No. 118), which were referred to the undersigned. The parties submitted written evidence, and the Court conducted oral argument on July 29, 2019.

This lawsuit involves an accident between two tractor/trailers occurring at approximately 12:30 a.m., on July 31, 2017, during which Plaintiff Adam Cox ("Cox") suffered severe injuries.[1] In the referred motions, Plaintiffs and Defendants both seek sanctions for the other parties' alleged spoliation of evidence. For reasons explained below, both motions are denied.

### I.     Plaintiffs' Motion for Spoliation Sanctions (ECF No. 88)

It is undisputed that Defendant Swift Transportation Company of American ("Swift") failed to preserve and was unable to produce the following evidence: (1) data stored on the electronic control module ("ECM") of the Swift tractor/trailer driven by Defendant Sai Wai

---

[1] The basic facts are set forth in the Opinion and Order of United States District Judge Claire Eagan dated April 9, 2019 (ECF No. 60) and are not repeated here. Specific facts relevant to the spoliation issues are discussed as necessary in the Court's analysis.

("Wai"),[2] which would have provided information regarding the speed of Wai's vehicle at the time of the accident and any "Critical Event Report" prompted by hard braking or a sudden drastic change in speed ("ECM data"); (2) messages delivered from Wai to Swift via a mobile communication system known as Qualcomm, which would have shown "macro" codes and information indicating a breakdown or accident ("Qualcomm messages");[3] and (3) Wai's electronic driver logs for the 1.5 hours immediately prior to the accident, which were also stored electronically on the Qualcomm system ("E-Logs").[4]

Plaintiffs request two alternative sanctions under Federal Rule of Civil Procedure 37(e): (1) a directed verdict on the issue of liability; or (2) an adverse inference jury instruction. ECF No. 88 at 14. In order to impose either sanction, the Court must find: (1) that the electronically stored information ("ESI") "should have been preserved in the anticipation or conduct of litigation"; (2) that Swift "failed to take reasonable steps to preserve it"; (3) that it "cannot be restored or replaced through additional discovery"; and (4) that Swift "acted with the intent to deprive [Plaintiffs] of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2).[5] Rule 37(e)(2) authorizes "very severe measures to address or deter failures to preserve [ESI], but only

---

[2] The Complaint alleges, and Judge Eagan previously found, that Wai was driving at the time of the accident. ECF No. 60 at 1-2. Although Plaintiff appears to continue to dispute this fact, this Opinion and Order is consistent with the Complaint and prior Orders of the Court.

[3] Wai testified in his deposition that he first called in a "breakdown" because, at the time of impact, he thought he blew a tire. Plaintiffs argue they need the Qualcomm data, in part, to explore this testimony and whether Wai provided any relevant information about the condition of the vehicle. *See, e.g.,* ECF No. 89-3 (sample accident notification identified as Macro 52, which requests certain information from the driver).

[4] Swift provided all other E-Logs pre-dating the accident.

[5] Unlike Rule 37(e)(1), Rule 37(e)(2) does not require an express or separate finding of prejudice because "the finding of intent required by [Rule 37(e)(2)] can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position." Fed. R. Civ. P. 37(e) advisory committee's note (2015).

on finding that the party that lost the information acted with the intent to deprive another party of the information's use in the litigation," and Rule 37(e)(2) was "designed to provide a uniform standard in federal court for use of these serious measures." Fed. R. Civ. P. 37(e) advisory committee's note (2015).

Rule 37(e)(2)'s intentional deprivation requirement is consistent with Tenth Circuit law regarding the imposition of severe sanctions in the form of adverse inference instructions. *See Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009) (holding that sanction of adverse inference instruction requires finding of bad-faith conduct, and that mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case); *Browder v. City of Albuquerque*, 209 F. Supp. 3d 1236, 1244 (D.N.M. 2016) (setting forth Tenth Circuit law on spoliation and requiring intentional, bad-faith conduct for imposition of adverse inference instruction). The Court's conclusions below would be the same under the federal rule governing ESI and general Tenth Circuit law.

### A. ECM Data/Qualcomm Messages

The Court finds as follows regarding Swift's non-preservation of the ECM data and Qualcomm messages. Swift could have preserved the ECM data by downloading the data from the truck at or near the time of the accident. Instead, the data was lost through automatic "overrides" that occurred sometime after the truck was restarted and driven. Swift could have preserved the Qualcomm messages by saving them in its computer system. Instead, the Qualcomm messages were automatically deleted pursuant to Swift's data retention policy, which provides that Qualcomm messaging data is retained for at least seven but no more than forty-five days. Swift received actual notice of Plaintiffs' suit on or around October 17, 2017, upon receipt of a spoliation letter from Plaintiffs' counsel (approximately 78 days after the accident). By this date, the ECM

data and Qualcomm messages were lost. Bill Peyton, Swift's Regional Safety Director, admitted the evidence could have been preserved.[6]

As its justification for non-retention of evidence at the scene or prior to receipt of the spoliation letter, Swift contends it "had no reason to believe that [the data] should have been retained, as the accident was caused by [Plaintiff Adam Cox ("Cox")], not Wai." ECF No. 137 at 2. As factual support for this causation determination and resulting lack of retention, Swift relies on the conclusions and report of the investigating Officer Jason McCarthy ("McCarthy"), who was present at the scene. McCarthy ultimately stated in his report that Unit 1 (Cox's vehicle) struck Unit 2 (Wai's vehicle) in the rear; that Unit 2 was re-entering the turnpike from the Kum and Go just previous to the collision and had maintained eastbound travel in the outside lane for approximately 546 feet before being struck by Unit 1; that the driver of Unit 2 stated he had his 4-way emergency flashers on; that the driver of Unit 1 stated he noticed the trailer in front of him at the last second and tried to swerve left; that the extreme damage to both vehicles suggested a drastic difference in speed; that there were no visible tire marks; that eastbound traffic was able to avoid striking Unit 1 after the accident, even though it did not have any lights on its trailer; that the driver of Unit 1 was not able to give a reason for not seeing Unit 2 sooner than he did; that Unit 1's view was not obstructed; that investigation of other vehicles entering the turnpike revealed an average speed of 37 miles per hour at the area of impact; and that based on the speed other tractor/trailers obtained in that distance, McCarthy found it reasonable that Unit 2 was traveling

---

[6] Plaintiffs have not shown that the ECM data or Qualcomm messages were subject to preservation requirements in the federal regulations. While there is a regulation that potentially relates to retention of the Qualcomm messages, *see* 49 C.F.R. § 395.11(c)(1)(iv), this regulation took effect on December 18, 2017, after the data was lost in this case.

slower than the 50 mph speed limit. *See* ECF No. 26-1 at 5.[7] McCarthy did not issue a citation to Wai and permitted Wai to leave the scene in the truck, knowing data would be overwritten on the ECM.[8] Swift had an insurance adjuster at the scene of the accident, who did not cause the ECM data to be downloaded and also permitted Wai to leave the scene of the accident in the truck. Swift was aware of McCarthy's conclusions based on McCarthy's communications with the adjuster and through McCarthy's subsequent report.

After consideration of the record and the parties' oral argument, the Court finds that Swift did not "act[] with the intent to deprive [Plaintiffs] of the information's use in the litigation" and therefore declines to impose either of the severe sanctions requested by Plaintiffs. *See* Fed. R. Civ. P. 37(e)(2). Swift's stated reason for failing to download the ECM data or immediately place a litigation hold on evidence is adequately supported by McCarthy's investigation, conclusions, and report, and the Court finds no inference or indication that Swift engaged in bad faith or intentional conduct aimed at depriving Plaintiffs of this evidence. Although Plaintiffs argue that the evidence surely would have been retained had it been favorable to Swift, the Court finds this argument overly speculative and unsupported. Swift had no indication the evidence would reflect anything other than what McCarthy concluded at the scene – namely, that Wai had not reached the speed

---

[7] Facts in the report are consistent with the transcript of a recorded conversation between McCarthy, Cox, and Cox's sister soon after the accident, in which McCarthy stated:

> And why you didn't see that truck is something we may never know but, I mean, I have to believe there's some kind of inattention . . . . You should have been able to see that vehicle in front of you, just like everyone else saw you even though your lights were off and stopped. . . . I'm not going to show any causation on the other driver, because it's very reasonable for him to be going slow because he just merged.

ECF No. 118-1 at 15:7-18.

[8] McCarthy's decision to permit Wai to leave the scene without downloading the ECM data is not determinative of spoliation issues. As argued by Plaintiffs, it was Swift's decision whether or not to preserve evidence, and Swift certainly had the authority to do so at the scene of the accident.

limit, was entering the turnpike when struck from behind by Cox at a high speed, and that Wai had on emergency flashers. While it is possible the lost evidence would have assisted Plaintiffs in proving one of their theories in this litigation, the Court finds Swift's non-retention decisions were made in good faith based on facts known to it at the time. Therefore, even assuming a preservation duty arose and the non-retention decisions could be deemed questionable or negligent, the Court finds no indication that Swift acted with intent to deprive Plaintiffs of the ECM data or the Qualcomm messages, or otherwise engaged in bad-faith conduct. *See Browder*, 209 F. Supp. 3d at 1247 (finding no evidence of intentional loss or bad-faith loss of documents even where defendant failed to retain certain documents based on "questionable" and negligent retention decisions by employees, and declining to impose adverse inference instruction). *See also* Fed. R. Civ. P. 37(e) advisory committee's note (2015) (explaining that intentional deprivation is required for adverse inference and other more severe sanctions, because "[i]nformation lost through negligence may have been favorable to either party, including the party that lost it, and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have"). The Court denies Plaintiffs' requested sanctions of a directed verdict on liability or an adverse inference instruction. *Cf. Swift Transp. Co. of Ariz., LLC v. Angulo*, 716 F.3d 1127, 1135 (8th Cir. 2013) (affirming "spoliation instruction" given to jury where trial judge found Swift had been "intentionally deceptive" and trial judge mentioned Swift's "intentionally wrong actions during discovery").

### B.     E-Logs

Swift maintains electronic driver logs consistent with federal regulations requiring such logs to be maintained for a 6-month period. *See* 49 C.F.R. § 395.8(k)(1). Upon receipt of the spoliation letter, Swift placed a litigation hold on Wai's E-Logs pre-dating the accident. However,

when Plaintiffs requested the documents in a discovery request,[9] Swift realized it failed to retain 1.5 hours of logs form the early morning hours of July 31, 2017. Swift offered the following explanation for this failure:

> Swift received notification of the accident in its Arizona office at prior to midnight, Mountain Standard Time, on July 30, 2017. Even though the accident occurred in the Central Time Zone, Swift failed to convert the accident time to account for the time difference. Thus, when the retention letter was received, logs from July 30, 2017 and backwards were retained, while the one and one half [hours] of pre-accident logs for July 31st [were] not retained.

ECF No. 137 at 4. *See also* ECF No. 137-3 (Wai Driver Logs for 7/29/17 and 7/30/17) (showing all but the 1.5 missing hours that occurred on July 31, 2017, Central Time). The Court finds this explanation plausible and consistent with the actual missing data. This explanation, at most, shows a negligent failure to retain by Swift. As explained above, negligent failures to retain evidence cannot support Plaintiffs' requested sanctions in this case, and Plaintiffs' motion for sanctions based on failure to preserve the missing E-logs is also denied.

## II.     Defendants' Motion for Sanctions (ECF No. 118)

It is undisputed that Plaintiffs Adam and Kimberly Cox failed to preserve and were therefore unable to produce the following evidence: (1) ECM data from Cox's vehicle, which Defendants argue would have (a) provided information regarding the speed of Cox's vehicle at the time of the accident,[10] and (b) potentially bolstered its expert's opinion that Cox failed to brake;[11] and (2) Cox's paper driver logs, which were on the dashboard at the time of the accident ("Logs").

---

[9] Plaintiffs issued their First Set of Requests for Production to Defendant Swift on May 30, 2018. *See* ECF No. 27 at 3.

[10] GPS tracker data produced by Plaintiffs indicates Cox was travelling approximately 72 mph approximately three minutes before the collision. ECF No. 151-3.

[11] Plaintiffs admit Cox failed to brake and argue the braking data is therefore irrelevant. ECF No. 151 at 5 ("The evidence shows that Plaintiff Adam Cox did not apply his brakes before the collision. He did not have time. This is not contested.").

Like Plaintiffs, Defendants request only the severe sanctions of dismissal of Plaintiffs' case or an adverse inference instruction regarding the spoliated evidence. ECF No. 118 at 5. Applying the legal principles explained above,[12] the Court easily concludes that Plaintiffs did not intentionally deprive Defendants of evidence or engage in any bad-faith conduct by failing to preserve the ECM data or the Logs. The engine, including the ECM device, was hauled away as debris from the scene of the accident by Environmental Remediation Services, Inc., ("ERS"), held for thirty days, and then sent to the scrap yard. Cox was in the hospital for five weeks following the accident. It strains reason to find that Plaintiffs acted with intent to deprive Defendants of this evidence when, at most, Plaintiffs failed to prevent another entity, ERS, from scrapping the engine pursuant to ERS's own standard retention policy. Even assuming Defendants could show Plaintiffs retained custody and control of the engine and anticipated litigation at that time, Defendants have failed to make even a colorable showing of intentional conduct by Plaintiffs that would warrant their requested sanctions.

With respect to the Logs on the dashboard, Plaintiffs responded to requests for production by stating the Logs were destroyed in the accident. This explanation is plausible, given the nature of the accident, the damage to Cox's vehicle, and the undisputed speed with which Cox struck the other vehicle. This explanation is also supported by Cox's testimony that his cell phone, which his brother-in-law retrieved from the dashboard following the accident, was completely destroyed. If the Logs were destroyed in the accident, their destruction was clearly not the result of any intentional or bad-faith conduct. The Court credits Plaintiffs' explanation as to the Logs and finds insufficient evidence of any intentional actions aimed at depriving Defendants of this evidence.

---

[12] The Logs are not ESI and are governed by general Tenth Circuit law on spoliation, rather than Rule 37(e).

Accordingly, Defendants' requested sanctions of dismissal or an adverse inference instruction are denied.[13]

## III. Conclusion

Plaintiffs' Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 37 for Defendant Swift's Spoliation of Evidence (ECF No. 88) and Defendants' Motion for Sanctions for Plaintiffs' Spoliation of Evidence (ECF No. 118) are DENIED.

**SO ORDERED** this 6th day of August, 2019.


_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**

---

[13] Although it does not show identical information as would the Logs, Plaintiffs produced GPS tracking data which shows the trailer began to be in service at 5:00 pm on July 30, 2017; shows the starting location in Denton, Texas; and shows the stops and driving speeds prior to the time of the accident.