# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ADAM COX and**<br>**KIMBERLY COX,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 18-CV-0117-CVE-JFJ** |
| | ) | |
| **SWIFT TRANSPORTATION CO. OF** | ) | |
| **ARIZONA and LLC, SAI WAI,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Now before the Court are various motions filed by the parties, including defendants' motions for partial summary judgment (Dkt. ## 70, 71), defendants' motion to bifurcate the trial (Dkt. # 83), and defendants' motion for "improved" voir dire (Dkt. # 201). The parties have also filed numerous motions in limine (Dkt. ## 64, 112, 113, 114, 115, 116, 117, 119, 120, 122, 123) seeking a pretrial ruling on the admissibility of witness testimony and evidence.

## I.

On July 31, 2017, two tractor-trailers were involved in an accident on the Will Rogers Turnpike near Vinita, Oklahoma. Sai Wai was driving a tractor-trailer owned by Swift Transportation Co. of Arizona (Swift), and he had pulled into a rest stop off of the highway. Dkt. # 71-5. Adam Cox was operating a tractor-trailer and he was travelling eastbound on the highway. Id. Wai was merging onto the highway and his tractor-trailer had not reached highway speed, and his tractor-trailer was rear-ended by Adam Cox's vehicle. Id.

Defendants claim that Wai's tractor-trailer was accelerating as Wai attempted to merge onto the highway, and Wai states that he had his four-way emergency flashers were on when the accident occurred. Dkt. # 71-1, at 5. Adam Cox testified in his deposition that he moved into the lefthand lane to allow another tractor-trailer onto the highway, and he merged back into the righthand lane after the other tractor-trailer signaled to him that the lane was clear. Dkt. # 71-2, at 2. The collision occurred shortly after Adam Cox moved back into the righthand lane, and he rear-ended Wai's tractor trailer as Wai attempted to merge onto the highway. Dkt. # 70-1, at 5. Oklahoma Highway Patrol (OHP) Trooper Jason McCarthy was called to the scene, and the evidence suggested that there was a substantial difference in speeds between the two vehicles. Id. He concluded that it was "reasonable" for Wai's tractor-trailer not to have reached highway speed, and he stated that Adam Cox "was not able to give a reason for not seeing [Wai's vehicle] sooner than he did." Id. However, McCarthy did not issue a citation to either driver.

Plaintiffs argue that there is evidence tending to support an inference that Wai did not have his four-way emergency flashers turned on as he attempted to merge onto the highway. Dkt. # 90, at 11. Plaintiffs also argue that Wai has a history of being involved in traffic accidents and other "at risk" driving behavior that should have put Swift on notice that Wai posed a risk to the safety of the driving public. Id. at 8-10.

On March 5, 2018, plaintiffs Adam and Kimberly Cox filed this case alleging negligence and negligence per se claims against Wai and Pyae Maung, a passenger in Wai's tractor-trailer when the accident occurred. Dkt. # 2. Plaintiffs allege that Swift is vicariously liable for the conduct of its employees, and plaintiffs also allege that Swift is directly liable under a theory of negligent entrustment. Plaintiff Kimberly Cox seeks damages for loss of consortium. Maung filed a motion

2

for summary judgment (Dkt. # 26) on the ground that a passenger cannot be held liable merely for being present when an accident occurred, and the Court granted Maung's motion. Dkt. # 60. The parties engaged in numerous discovery disputes, and each side filed a motion for sanctions for alleged spoliation of evidence. Dkt. ## 88, 118. The motions for sanctions were referred to a magistrate judge, and the magistrate judge denied the motions. Dkt. # 202.

## II.

Swift and Sai Wai argue that there are no genuine issues of material fact as to the possibility that plaintiffs may recover punitive damages, because there is no evidence suggesting that Sai Wai acted intentionally or with reckless disregard for the rights of others. Dkt. # 71. Swift also seeks summary judgment on plaintiffs' claim of negligent entrustment against Swift, because Swift has admitted that it can be held liable for any negligence of its employee, Sai Wai. Dkt. # 70.

## A.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

3

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Id.</u> at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. <u>Garratt v. Walker</u>, 164 F.3d 1249, 1251 (10th Cir. 1998).

## B.

Swift and Wai ask the Court to enter summary judgment on the issue of punitive damages, because they claim that the undisputed facts would not support an award of punitive damages in favor of plaintiffs. Punitive damages may be awarded only if the plaintiff shows by clear and convincing evidence that the defendant has been "guilty of reckless disregard for the rights of others." OKLA. STAT. tit. 23, § 9.1. A person acts in reckless disregard for the rights of others if he "was either aware, or did not care, that there was a substantial and unnecessary risk that [his] conduct would cause serious injury to others." <u>Gowens v. Barstow</u>, 364 P.3d 644, 652 (Okla. 2015). The trial court must determine as a matter of law whether the plaintiff has produced sufficient evidence that a reasonable jury could find that a defendant acted with reckless disregard before instructing the jury as to punitive damages. <u>Badillo v. Mid Century Ins. Co.</u>, 121 P.3d 1080, 1106 (Okla. 2005).

The Court must view the evidence in a light most favorable to the non-moving party and, under this standard, defendants' motions for summary judgment should be denied on the issue of punitive damages. The parties rely on essentially the same facts and evidence to support their characterization of the accident, but the evidence supports more than one reasonable interpretation as to the cause of the accident. The Court cannot rule out Adam Cox's deposition testimony that he did not believe that Wai turned his four-way emergency flashers on when he pulled onto the highway. Dkt. # 87-5, at 3. There is no dispute that Wai was not moving at highway speed when the accident occurred. Plaintiffs have also offered evidence that Wai had been involved in prior accidents and this could be relevant to an award of punitive damages under a negligent entrustment theory. Dkt. # 87-6. The evidence is not so one-sided in this case that the Court can find that plaintiffs' demand for punitive damages has no likelihood of success, and this issue is not appropriate for summary judgment.

## C.

Swift argues that it has admitted that it is liable for Wai's conduct and, under Oklahoma law, it can no longer be held liable under direct theories of negligence such as negligent entrustment or negligent hiring. "Negligent entrustment of an automobile occurs when the automobile is supplied, directly or through a third person, for the use of another whom the supplier knows, or should know, because of youth, inexperience, or otherwise, is likely to use it in a manner involving unreasonable risk of bodily harm to others . . . ." Sheffer v. Carolina Forge Co., LLC, 306 P.3d 544, 548 (Okla. 2013). To establish a claim of negligent entrustment, the plaintiff must show that a reasonable person knew or should have known that the person entrusted with the vehicle would be likely to operate it in a careless, reckless, or incompetent manner. Green v. Harris, 70 P.3d 866, 869 (Okla.

2003). A necessary element of a negligent entrustment claim is that the plaintiff's injury result from the driver's careless or reckless operation of the vehicle. Clark v. Turner, 99 P.3d 736, 743 (Okla. Civ. App. 2004).

Swift raises two separate arguments in its motion for summary judgment as to plaintiff's claim of negligent entrustment. First, Swift cites Jordan v. Cates, 935 P.2d 289 (Okla. 1997), and argues that an employer cannot be held liable under theories of direct negligence if it has admitted to respondeat superior liability. Dkt. # 70, at 6-12. Second, Swift argues that plaintiffs have not offered sufficient evidence to support a claim of negligent entrustment. The Court can easily dispose of the first argument, because the Oklahoma Supreme Court has limited Jordan to its facts and has since recognized that a plaintiff can bring claims of direct negligence even after an employer has stipulated to respondeat superior liability. In Fox v. Mize, 428 P.3d 314 (Okla. 2018), the Oklahoma Supreme Court found that an employer's stipulation to respondeat superior liability does not bar a plaintiff from bringing a separate claim for negligent entrustment. Id. at 322-23. Swift argues that plaintiffs' claim of negligent entrustment serves "no practical purpose," and plaintiffs will not prevail on a negligent entrustment claim unless they can show that Wai was at fault for the accident. Dkt. # 133, at 4. Even if it is not practical, plaintiffs are the masters of their own case and the Court will not prevent them from bringing all viable claims they wish to assert against defendants.

Swift also argues that there is no evidence tending to support plaintiffs' claim of negligent entrustment. Dkt. # 70, at 13-15. However, Swift does not dispute that Wai has previously been involved in traffic accidents and that at least two of the accidents were deemed "preventable." Id. at 4; Dkt. # 72, at 19. Plaintiffs cite eleven prior incidents concerning Wai that allegedly qualify as "at-risk" driving under Swift's standards. Dkt. # 90-5. These incidents include accidents, traffic

tickets, and an incident in which Wai nearly caused an accident due to fatigue.  Id.  As will be explained in this Opinion and Order, many of these incidents do not bear a close similarity to the accident in this case, and not all of this evidence may be admissible at trial.  However, the Court is ruling on a motion for summary judgment and it would be premature to assume that certain evidence will not be admissible at trial.  Plaintiffs have offered evidence that Wai had been involved in prior traffic accidents and that Swift was aware of Wai's driving record, and there are genuine disputes as to material facts that preclude the entry of summary judgment on plaintiffs' negligent entrustment claim.

### III.

Defendants ask the Court to bifurcate the trial into separate phases on the issues of liability and damages.  Dkt. # 83.  Plaintiffs respond that there is no disproportionality as to the amount of evidence as to liability and damages, and there will be no benefit in terms of judicial economy or conservation of the parties' resources if the trial is bifurcated.  Dkt. # 104, at 3.  Plaintiffs state that they intend to put on evidence as to defendants' liability for punitive damages in the first phase of trial, and they will offer evidence as to the amount of punitive damages in a second stage trial.  Id. at 5.

Defendants argue that bifurcation of the trial as to issues of liability and damages will conserve the parties' resources and avoid the risk of jury sympathy impacting the verdict.  Dkt. # 83. Under Fed. R. Civ. P. 42(b), a court may order separate trials of "one or more separate issues" for convenience, to avoid prejudice, or to expedite the proceedings.  District courts have substantial discretion to determine whether bifurcation of a trial will further the convenience of the parties or avoid prejudice.  Aragon v. Allstate Ins. Co., 185 F.3d 1281, 1285 (D.N.M. 2016).  The party

moving for bifurcation has the burden to demonstrate the need for bifurcation, because a single trial on all issues ordinarily lessens the expense and inconvenience of litigation for the parties. <u>Id.</u> Bifurcation is not warranted if there will be substantial overlap of the same facts and witnesses in both phases of the case or if any savings of time and expense is speculative. <u>Pinon Sun Condominium Assoc., Inc. v. Atain Specialty Ins. Co.</u>, 2018 WL 5312881 (D. Colo. Oct. 26, 2018).

Defendants have not shown that bifurcation of the trial into liability and damages phases will conserve the parties' resources or promote judicial economy. The trial would undoubtedly be shorter if the Court bifurcated the issues of liability and damages and defendants were to prevail at the liability stage. However, defendants have not shown that the evidence weighs strongly in favor of either party, and the Court has no basis to find that a shorter trial will likely result if the trial is bifurcated. As to possible jury sympathy, there is always a risk that jurors will sympathize with an injured plaintiff, and that is why the Court always instructs the jury not to allow sympathy for any party to affect their deliberations. The Court declines to bifurcate the trial into separate phases for liability and damages. The parties are advised the Court will follow its standard procedure for cases involving the possibility of punitive damages, and the trial will be divided into two phases. In the first phase, the jury will consider defendants' liability, plaintiffs' compensatory damages, and whether defendants acted with requisite level of reckless disregard or malice to justify a second phase for punitive damages. The jury will answer a special interrogatory with regard to reckless disregard or malice. **No one will mention punitive damages or a second phase during the first phase.** The jury will consider evidence of punitive damages and the amount therefor in a second phase of trial only if the jury finds by clear and convincing evidence that defendants can be held liable for punitive damages under OKLA. STAT. tit. 23, § 9.1.

# IV.

The parties have filed numerous motions in limine concerning the admissibility of evidence at trial. "The purpose of a motion in limine is to aid the trial process by enabling the Court 'to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitively set for trial, without lengthy argument at, or interruption of, the trial.'" <u>Mendelsohn v. Sprint/United Management Co.</u>, 587 F. Supp. 2d 1210, 1208 (D. Kan. 2008). However, a court is almost always better situated to make evidentiary rulings during trial, and a court may defer an in limine ruling unless the party seeking to exclude evidence shows that the evidence is inadmissible on all potential grounds. <u>Wright v. BNSF Railway Co.</u>, 2016 WL 1611595, *1 (Apr. 22, 2016). Plaintiffs filed this case in federal court based on diversity jurisdiction, and the admissibility of evidence is generally governed by federal law. <u>Blanke v. Alexander</u>, 152 F.3d 1224, 1231 (10th Cir. 1998). State law concerning the admissibility of evidence will be considered only if the issue involves a "substantive" state rule of evidence, such as the collateral source rule or the parol evidence rule. <u>Id.</u> The parties are advised that all ruling on the motions in limine are preliminary. This is especially true in this case given the volume of requests for in limine rulings, and the Court will not attempt to rule on the admissibility of each piece of evidence that may be offered at trial. Instead, the Court will provide general guidance as to the admissibility of evidence and witness testimony, and most of the issues raised by both parties are more appropriately considered in the context of a jury trial.

## A.

The Court will initially consider the parties' challenge to the admissibility of witness testimony. This includes witnesses designated as experts by plaintiffs and defendants, OHP Trooper McCarthy, and possible eyewitnesses Charles and Deanna Johnson. Dkt. ## 64, 112, 114, 115, 119.

<u>John Pinckney (Dkt. # 112)</u>

Plaintiffs have filed a motion seeking to exclude evidence that Adam Cox violated the Federal Motor Carrier Safety Regulations (FMCSR), and he specifically objects to the testimony of defendants' expert witness, Pinckney, on this issue.  Defendants retained Pinckney to offer expert opinions concerning the application of federal regulations, the Commercial Driver's License (CDL) manual, and the preventability of the accident.  Dkt. # 112-1.  Pinckney opines that both Swift and Adam Cox's employer, Titus Transportation (Titus), were subject to the FMCSR, and Adam Cox and Wai both held CDLs and were permitted to operate tractor-trailers.  <u>Id.</u> at 2.  Pinckney states that Swift was not required to conduct post-accident drug or alcohol testing under  49 C.F.R. § 382.303 and that Titus violated this rule by conducting such testing of Adam Cox.  <u>Id.</u>  Pinckney claims that Swift did not violate the FMCSR by failing to maintain Wai's driver hours of service records for at least 6 months following the accident.  <u>Id.</u> at 2-3.  He also states that Adam Cox failed to produce evidence that his vehicle had a periodic inspection within 12 months of the accident, and Adam Cox violated regulations concerning the maximum number of hours spent driving following a rest period on June 26, 2017.  <u>Id.</u> at 3.  According to Pinckney, Wai was operating his vehicle in a reasonable manner at the time of the accident and Adam Cox failed to maintain a sufficient lookout for vehicles on the road ahead of him.  <u>Id.</u> at 5.  Pinckney believes that the accident was preventable on the part of Adam Cox and he could have avoided the accident if he had paid attention for vehicles entering the righthand lane.  <u>Id.</u>

In <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), the Supreme Court held that district courts must initially assess the admissibility of "scientific" expert testimony under Fed. R. Evid. 702.  The Supreme Court extended the gatekeeper role of federal district courts to all

expert testimony in Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999). In Bitler v. A.O. Smith Corp., 400 F.3d 1227 (10th Cir. 2005), the Tenth Circuit discussed the role of district courts when considering a Daubert challenge to the admissibility of expert testimony. First, the court should make a preliminary finding that the expert is qualified to testify. Id. at 1232-33. Next, the proponent of expert testimony must establish that the expert used reliable methods to reach his/her conclusion and that the expert's opinion is based on a reliable factual basis. Id. at 1233. The Tenth Circuit cited four factors that district courts should apply to make a reliability determination:

> (1) whether a theory has been or can be tested or falsified; (2) whether the theory or technique has been subject to peer review and publication; (3) whether there are known or potential rates of error with regard to specific techniques; and (4) whether the theory or approach has "general acceptance."

Id. at 1233 (citing Daubert, 509 U.S. at 593-94). The Tenth Circuit was clear that "a trial court's focus generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions." Id. In other cases, the Tenth Circuit has emphasized that any analytical gap in an expert's methodology can be a sufficient basis to exclude expert testimony under Daubert. Trucks Ins. Exchange v. MagneTek, Inc., 360 F.3d 1206, 1212-13 (10th Cir. 2004); Goebel v. Denver & Rio Grande Western R. Co., 346 F.3d 987, 992 (10th Cir. 2003). Under Daubert, "'any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology.'" Mitchell v. Gencorp Inc., 165 F.3d 778, 783 (10th Cir. 1999) (citing In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 745 (3d Cir. 1994)).

Plaintiffs argue that alleged violations of the FMCSR by Adam Cox or his employer are irrelevant, because defendants do not have claims against him and admission of this evidence would

be unfairly prejudicial. Dkt. # 112, at 3. Plaintiffs ask the Court to exclude Pinckney's testimony about Adam Cox's alleged violations of the FMSCR. He argues that it is the Court's duty to "interpret the rules and regulations" and that testimony concerning alleged violations of the FMSCR is improper expert testimony under the Federal Rules of Evidence. Id. at 5. Defendants respond that they have asserted the affirmative defense of contributory negligence, and Adam Cox's violations of applicable federal regulations is relevant. Dkt. # 158, at 3.

The Court finds that limited aspects of Pinckney's testimony should preliminarily be excluded. Adam Cox's contributory negligence is a relevant issue and violations of federal regulations could be relevant, but the violations of federal regulations must have a close connection to the accident. For example, the fact that plaintiff may have exceeded the number of hours he was permitted to drive about a month before the accident occurred does not appear to be relevant. The Court will not attempt to offer an exhaustive list of the permissible uses of this type of evidence, but defendants' assertion of an affirmative defense of contributory negligence will not permit it to bring up every prior bad act related to Adam Cox's driving. However, plaintiffs may open the door to the admissibility of certain evidence and the Court will not issue a conclusive ruling as to the use of any FMSCR violations by Adam Cox or Titus at trial. The parties are advised that there will not be one rule for the admissibility of expert testimony as to plaintiff and another rule for defendants, and expert testimony offered by either side will be subject to the same scrutiny. The Court will allow relevant evidence concerning violations of the FMSCR for both parties or not at all, and this a matter this is largely up to the parties. The parties are encouraged to confer in good faith before the trial in an attempt to come to an agreement about the use of this evidence. Plaintiffs' motion to exclude Pinckey's testimony (Dkt. # 112) is granted in part and denied in part.

<u>Roger Allen (Dkt. # 119)</u>

Defendants ask the Court to exclude the testimony of plaintiffs' expert witness, Roger Allen, in its entirety, because he is not qualified to testify about the FMCSR and his testimony will not assist the trier of fact. In the alternative, defendants identify 19 specific issues upon which Allen should not be permitted to offer expert testimony.

Plaintiffs argue that Allen will be testifying on the basis of his prior experience alone and <u>Daubert</u> is inapplicable. Dkt. # 156, at 6. This approach to the admissibility of expert testimony has specifically been rejected by the Tenth Circuit in light of the Supreme Court's decision in <u>Kumho Tire Co.</u>, in which the Supreme Court made clear that <u>Daubert</u> applies to all expert testimony. <u>United States v. Orr</u>, 692 F.3d 1079, 1092 n.27 (10th Cir. 2012). Therefore, Allen's testimony will be admissible only if the Court finds that he is qualified to testify and that he used a reliable methodology. As to his qualifications, the Court has been provided only one page of his resume and it does not provide any specific information about his background or training, and plaintiffs' response offers a very general description of Allen's background. Dkt. # 119-2. Allen may have experience as a truck driver, but his qualifications to testify about the requirements of Swift's driver safety program or the applicability of the FMSCR are unclear. For the purpose of this opinion and order, the Court will assume that Allen is qualified to testify and the Court will reserve a finding on this issue for trial. As to his methodology, Allen's report states as follows:

> The method is to review the available data which at a minimum includes crash reports, the company's existing driver safety program, and the driver's qualification and/or personnel file. The method is then to review deposition testimony taken in the case as well as driver related discovery available. Then after such review, the method is to determine whether any FMSCR and safety rules have been followed or violated and determine whether any violations resulted in the crash in question.

Dkt. # 156-1, at 6. A review of Allen's report shows that he generally followed this method and it appears that an expert in the field would follow a similar methodoloy. The Court will consider challenges to specific aspects of Allen's testimony, but it does not appear at this stage that Allen's testimony should be wholly excluded.

The Court does not find that Allen's testimony should be excluded in its entirety, but he will be subject to the same limitations as other witnesses on topics such as the applicability of the FMSCR and relevance of evidence to plaintiffs' claim of negligent entrustment. Allen's testimony must go to issues that are relevant to plaintiffs' claims, and his accident reconstruction and his opinions as to certain aspects of the FMSCR and drivers' manuals appear to be relevant. However, he offers extensive opinions on federal regulations not specifically relevant to the cause of the accident and alleged deficiencies in Wai's training that have nothing to do with the accident. This includes numerous opinions on Swift and Wai's post-accident conduct, and many of these opinions are offered solely to cast defendants as bad actors. Allen should refrain from making inflammatory statements, such as his opinion that defendants "put the general motoring public in jeopardy," because this type of opinion is not relevant to plaintiffs' claims and encourages the jury to make a discussion based on passion or prejudice rather than the facts of the case. Dkt. # 156-1, at 14. Defendants' motion to exclude Allen's testimony (Dkt. # 119) is granted in part and denied in part.

Charles and Deanna Johnson (Dkt. ## 114, 115)

Defendants have filed motions to limit the testimony of Charles and Deanna Johnson to fact testimony as to their actual observations of the subject tractor trailers before and after the accident, and defendants believe that plaintiffs' counsel will attempt to elicit opinion testimony outside the scope of the witness' factual testimony. Defendants list 12 categories of opinion testimony about

which Deanna Johnson should be prohibited from testifying and 9 categories of evidence about which plaintiffs' counsel should not seek opinion testimony from Charles Johnson. Defendants do not dispute that Charles Johnson observed Adam Cox's tractor-trailer shortly before the accident. There is also no dispute that Charles and Deanna Johnson observed the tractor-trailers following the accident. However, defendants are concerned that plaintiffs' counsel will attempt to elicit opinion testimony concerning causation of the accident, the Johnsons' opinion of Swift, how they were affected by the accident, and other types of opinion evidence outside the scope of their fact testimony. Dkt. ## 114, 115.

In plaintiffs' response to the motions for summary judgment, plaintiffs state that Adam Cox was driving on the Will Rogers Turnpike near Vinita, and he saw a tractor-trailer being driven by Charles Johnson attempting to merge onto the highway. Dkt. # 87, at 1. Adam Cox saw the Johnsons' tractor-trailer and moved into the lefthand lane to allow Charles Johnson to merge onto the highway. Id. at 2. Adam Cox moved back into the righthand lane after he had passed the Johnsons' tractor-trailer, and Adam Cox collided with the Wai's tractor-trailer. Id. It does not appear that Charles Johnson directly observed the accident, but this aspect of his testimony is not clear from the parties' submissions. Deanna Johnson was allegedly asleep in the sleeper berth of the Johnsons' tractor-trailer when the accident occurred. Dkt. # 115, at 3.

Under Fed. R. Evid. 701, the opinion testimony of a lay witness is admissible only if the opinion is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

The "perception" requirement "stems from [Fed. R. Evid. 602], which requires a lay witness to have first-hand knowledge of the events he is testifying about so as to present only the most accurate information to the finder of fact." United States v. Bush, 405 F.3d 909, 916 (10th Cir. 2005). Parties may not attempt to evade the requirements applicable to expert witnesses by encouraging lay witnesses to offer opinion testimony requiring scientific or other specialized knowledge. James River Ins. Co. v. Rapid Funding, LLC, 658 F.3d 1207, 1214 (10th Cir. 2011).

The Court finds that the Johnsons should be limited to offering fact testimony concerning the accident, and opinion testimony on other topics will likely not be admissible at trial. This exclusion of testimony includes concerning how the accident affected them emotionally, because this type of testimony has no relevance to the cause of accident and will likely be offered to inflame the jury. Charles Johnson may testify as to factual observations concerning the positions of the tractor-trailers and the damage to the vehicle following the accident, and Charles Johnson may testify about the events leading up to the accident. If Deanna Johnson was asleep, she may not so testify. However, neither Charles nor Deanna Johnson may testify about the cause of the accident or the condition of Wai's tractor trailer before the accident if they did not make first-hand observations of these events. Defendants' motions to limit the testimony of the Johnsons (Dkt. ## 114, 115) are granted.

OHP Trooper McCarthy (Dkt. # 64)

Plaintiffs argue that opinion testimony of an OHP trooper who investigated the accident, McCarthy, is inadmissible, because he does not have sufficient expertise to offer opinions as to causation and he lacks an evidentiary foundation for his opinions. Dkt. # 64, at 5-8. Plaintiffs also

seek a pretrial ruling that defendants' expert witnesses may not discuss McCarthy's factual findings concerning the cause of the accident. Id. at 6-7. Defendants respond that wholesale exclusion of McCarthy's testimony is unwarranted and, at a minimum, he should be permitted to testify about his observations at the scene of the accident. Dkt. # 65, at 4. Defendants argue that this should include McCarthy's opinion concerning the speed of Wai's tractor trailer when the accident occurred and his decision not to issue a citation to Wai. Id. at 7, 9.

The Court finds that plaintiffs' motion to exclude McCarthy's opinion testimony (Dkt. # 64) should be denied. The parties are advised that no witness, whether fact or expert, will be permitted to offer an opinion as to who caused the accident or who the jury should find at fault, and the Court would not have permitted McCarthy to offer such an opinion even if plaintiff had not filed a motion in limine. However, McCarthy investigated the accident and he can testify about his observations of the two tractor-trailers following the accident. This may include opinions about the relative speeds of the vehicles if he has an adequate factual foundation for these opinions and the opinion testimony would meet the requirements of Fed. R. Evid. 701. He may also testify that other vehicles traveling eastbound on the highway were able to avoid colliding with Wai's vehicle, because this would be a statement of fact rather than opinion testimony. Plaintiffs argue that McCarthy is not qualified to testify as an expert witness, but there is no indication that defendants will be calling McCarthy to testify as an expert. The Court will consider specific objections to McCarthy's testimony at trial, but plaintiff have not shown that McCarthy should be wholly prohibited from offering opinion testimony concerning the accident. Plaintiffs' motion to exclude opinion testimony by McCarthy (Dkt. # 64) is denied.

**B.**

The parties have filed numerous motions in limine as to the admissibility of evidence other than witness testimony. Key issues are the admissibility of evidence that either party violated the FMSCR before and after the accident and the scope of evidence admissible in support of plaintiffs' negligent entrustment claim. The Court will not attempt to resolve all of the issues raised in the parties' motions in limine, but the Court will offer some guidance as to the admissibility of evidence The Court will also consider defendants' motion for "improved" voir dire (Dkt. # 201).

Federal Motor Carrier Safety Regulations (Dkt. ## 112, 122)

Each party has filed a motion to prevent the opposing party from using evidence that the party violated the FMSCR before or after the accident occurred. Plaintiffs argue that defendants should be prohibited from using evidence that Adam Cox violated the FMSCR to support an affirmative defense of contributory negligence. Dkt. # 112. Defendants argue that the FMSCR cannot be used to support a private cause of action and many of the regulations likely to be cited by plaintiffs' witnesses are not relevant to the cause of the accident. Dkt. # 122.

The Court has reviewed the parties' motions and related briefing and finds that evidence concerning alleged violations of the FMSCR provides minimal support for plaintiffs' claim of negligent entrustment and defendants' affirmative defense of contributory negligence. However, the evidence is not wholly irrelevant and it is not likely to be unfairly prejudicial, and the Court will defer a ruling on the admissibility of this evidence until trial. The parties are advised that the same standard will apply to either party, whether the evidence is introduced by expert witnesses or otherwise, and this evidence must have some direct relevance to the cause of the accident. Neither plaintiffs nor defendants will be permitted to use evidence of violations of the FMSCR merely to

show that the opposing party is generally a bad actor. The parties are encouraged to confer before trial in an attempt to come to an agreement as to how the FMSCR may be used at trial, and the parties' pretrial motions (Dkt. ## 112, 122) to prevent the opposing party from using such evidence are denied.

Defendants' Alleged Wrongful Acts (Dkt. # 116)

Defendants ask the Court to exclude evidence that Wai had "prior traffic violations, accidents or incidents, as well as alleged "at-risk" behavior" that are "unconnected" to the accident at issue in this case. Dkt. # 116. Plaintiffs respond that evidence that Wai had a history of prior accidents or unsafe conduct is relevant to their negligent entrustment claim. Dkt. # 152. Plaintiffs identify some instances of Wai's prior conduct that they intend to use at trial, and it is possible that some of this evidence could be relevant to a negligent entrustment claim. However, it is not clear from plaintiffs' response which specific incidents from Wai's driving history that plaintiffs may seek to admit at trial, and the Court will not preliminarily assess the admissibility of each piece of potential evidence. Defendants' motion in limine to wholly exclude evidence of Wai's prior accidents or traffic incidents is denied, because there may be a permissible use for some of this evidence at trial. Plaintiffs are advised that they will be required to establish that the prior incident has a substantial connection to the accident at issue in this case. For example, the mere fact that Wai may have received a parking ticket will not be relevant to show that Swift should have been on notice that Wai would allegedly cause an accident by not merging onto a highway at an appropriate speed. The Court notes that this type of evidence has the potential to significantly delay the trial if the Court must assess the circumstances surrounding each prior incident, and plaintiffs are advised to limit this type of

evidence to events that are especially relevant to the accident. Defendants' motion (Dkt. # 116) is denied, but objections to specific items of evidence may be renewed at trial.

Golden Rule and Reptile Theory (Dkt. # 117)

Defendants ask the Court to prevent plaintiffs' counsel from making "Golden Rule" or "Reptile Theory" arguments that imply that the jurors should reach a verdict based on their emotional response to the evidence, rather than an unbiased decision based on the facts and law. Dkt. # 227. Plaintiffs ask the Court to deny defendants' motion in limine and argue that they should be able to pursue any theory of the case that is appropriate based on the evidence. Dkt. # 148. Plaintiffs do agree that they will refrain from making a Golden Rule argument as to damages, but they suggest that this type of argument is appropriate as to liability. Id. at 1-2. The parties' briefing does not suggest that plaintiffs will actually offer any of the arguments that defendants seek to exclude, and the Court finds that the motion (Dkt. # 117) is moot. Plaintiffs are cautioned that any argument that asks the jurors to reach a verdict solely on their emotional response to the evidence will be prohibited, and plaintiffs' arguments should be focused on the facts that are admissible at trial and the law applicable to their claims.

Swift's Policies or Manuals (Dkt. # 120)

Defendants ask the Court to exclude evidence concerning Swift's internal policies or driver manuals, specifically as this relates to post-accident testing for drug or alcohol use by a driver. Dkt. # 120. Plaintiffs respond that it is relevant that Swift allegedly failed to comply with its own policy that would have required post-accident drug or alcohol testing of Wai following the accident. Dkt. # 146, at 2. Neither plaintiffs nor defendants suggest that there is any evidence that Wai had actually used drugs or alcohol before the accident, and plaintiffs do not suggest that Wai was intoxicated

when the accident occurred. Instead, it appears that plaintiffs are attempting to show that Swift violated its own policy for the purpose of generally casting Swift as a bad actor. The parties are advised that the post-accident practices of both Adam Cox's employer, Titus, and Swift are not likely to be relevant at trial, and the parties should be focused on presenting evidence concerning the cause of the accident. The Court finds that defendants' motion in limine (Dkt. # 120) should be granted to the extent that defendants seek to exclude evidence concerning its post-accident procedures or policies.

Qualcomm Entries and Driver Logs (Dkt. # 123)[1]

Defendants ask the Court to exclude evidence that Wai input an incorrect code into an onboard computer following the accident and that Wai's driver logs from the time of the accident are missing. Plaintiffs respond that a jury could infer that "Wai had no idea what was happening that night" based on his entry of incorrect code. Dkt. # 155, at 4. Plaintiffs also argue that Swift was obligated to maintain driver logs under the FMSCR and this could be relevant to show that defendants generally failed to comply with applicable regulations. Id. at 5. The Court finds that defendants' motion (Dkt. # 123) should be denied, because the Court cannot determine if the disputed evidence would be inadmissable for all purposes. It would be reasonable for a jury to question why certain evidence was not offered at trial, especially if Adam Cox's driver logs or Qualcomm entries are offered at trial, and plaintiffs should be permitted to elicit testimony that explains the notable absence of certain evidence. However, this should not be interpreted as

---

[1] The magistrate judge's opinion and order (Dkt. # 202) denying the parties' motions concerning the alleged spoliation of evidence provides a thorough description of the Qualcomm system used by Swift to communicate with its drivers and the driver logs that are missing from Swift's system. The Court will not repeat those facts here, and the Court will focus on admissibility of certain aspects of this evidence.

invitation to use evidence of missing logs or an incorrect Qualcomm entry to generally show that defendants are bad actors. The magistrate judge has determined that defendants did not intentionally destroy evidence, and plaintiffs will not be permitted to argue that the jury should make an adverse inference against defendants. Plaintiffs will also not be allowed to offer speculative theories of negligence, such as a defect with Wai's vehicle, based only on the missing logs, because this would essentially be permitting the jury to make an adverse inference against defendants. Defendants' motion (Dkt. # 123) is denied, but plaintiffs are cautioned that this evidence will not be admissible at trial unless it is offered for a proper purpose.

<u>Defendants' Omnibus Motion in Limine (Dkt. # 113)</u>

Defendants ask the Court to exclude eleven categories of evidence at trial, and nearly all of defendants' requests are unopposed. The Court also notes that some of the issues raised in the motion have been addressed elsewhere in this Opinion and Order, and there is no need for the Court to repeat its prior rulings. The Court will specifically consider only defendants' requests to exclude evidence of other lawsuits against defendants and the alleged lack of post-accident investigation by Swift at this time. Defendants' omnibus motion in limine (Dkt. # 113) is granted in part as to any uncontested evidentiary issues and is denied in part as explained below.

Defendants ask the Court to exclude evidence of other claims or lawsuits against them, because this evidence is inadmissible under Fed. R. Evid. 404(b). Dkt. # 113, at 3. Plaintiffs respond that prior incidents of reckless driving by Wai are relevant to their negligent entrustment claim against Swift, and they intend to offer evidence of eleven incidents that occurred during the four years preceding the accident. The Court emphasizes its prior ruling concerning defendants' alleged wrongful acts, and any prior incidents involving Wai must bear a high degree of similarity

to accident at issue in this case. Allowing plaintiffs to introduce every minor incident in Wai's driving record has the potential to significantly delay the trial, and plaintiffs will bear the burden to show that a prior claim or lawsuit against Wai or Swift is sufficiently similar to the accident to be relevant in this case.

Defendants also seek to prevent plaintiffs from arguing that Swift was negligent for failing to conduct an adequate post-accident investigation. The Court has already suggested that this evidence appears to have little relevance to plaintiffs' claims, and plaintiffs' response to the motion in limine clearly shows that plaintiffs' use of this evidence would primarily be to cast defendants as bad actors and encourage the jury to draw an adverse inference against defendants. The Court will allow limited questioning concerning Swift's post-accident investigation and the cause of any missing driver logs, and the Court has explained that the purpose of this questioning would be to avoid juror confusion as to the absence of certain evidence. The lack or insufficiency of a post-accident investigation by Swift has no relevance to the issue of whether Swift negligently entrusted Wai with a vehicle before the accident occurred. Defendants may open the door to this line of inquiry by offering evidence concerning Swift's post-accident investigation, particularly if Swift argues that it complied with certain federal regulations or offers opinion testimony on the quality of its investigation. However, the Court sees no reason to allow extended inquiry on this topic at trial unless defendants make this topic relevant. Defendants' omnibus motion in limine (Dkt. # 113) is granted in part and denied in part.

Defendants' Motion for "Improved" Voir Dire (Dkt. # 201)

Defendants argue that Wai is a naturalized citizen of the United States whose native language is Burmese, and they are concerned that plaintiffs' counsel will rely on anti-immigrant sentiment in

potential jurors to deny defendants a fair trial. Dkt # 201, at 4. Defendants ask the Court to engage in an extended voir dire procedure to root out jurors with an unconscious bias against immigrants. Id. at 16-21. The parties are advised that the Court will engage in its standard voir dire procedure and the questioning of the prospective jurors will be conducted by the Court only. The parties have submitted proposed voir dire and the Court will review the parties' proposed voir dire before questioning potential jurors. The Court does not typically permit attorneys to submit juror questionnaires to be completed before the beginning of jury selection, and there is nothing unusual about this case that would suggest such a questionnaire is necessary. Defendant's motion for "improved" voir dire (Dkt. # 201) is denied.[2]

**IT IS THEREFORE ORDERED** that Defendant Swift Transportation's Motion for Partial Summary Judgment and Brief in Support (Dkt. # 70), Defendant Sai Wai's Motion for Partial Summary Judgment and Brief in Support (Dkt. # 71), Defendants' Motion to Bifurcate and Brief in Support (Dkt. # 83), and Defendants' Motion for Improved Voir Dire Conditions (Dkt. # 201) are **denied**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Exclude the Opinion Testimony of Trooper McCarthy (Dkt. # 64) is **denied**, and Plaintiffs' Combined Motion in Limine and Brief

---

[2]     Defendants argue that additional voir dire procedures are necessary because plaintiffs' counsel may attempt to offer evidence that Wai does not have the ability to read or write English. Dkt. # 201, at 4. The Court's denial of defendants' motion (Dkt. # 201) should not be interpreted to mean that the Court is finding that plaintiffs' counsel may offer evidence concerning Wai's grasp of English at trial. Plaintiffs must show that Wai's ability to read and write English is relevant to the accident, and it is not apparent that Wai's ability to understand English affected the rate at which he sped up to merge onto the highway. The Court is not excluding the evidence at this time, but plaintiffs must make a showing of relevance if this evidence is offered at trial.

to Prohibit Testimony, Evidence or Argument Regarding any Alleged Violation of the FMSCR by Plaintiff or his Employer (Dkt. # 112) is **granted in part** and **denied in part**.

**IT IS FURTHER ORDERED** that Defendants' Motion in Limine Regarding Anticipated Testimony from Charles Johnson and Brief in Support (Dkt. # 114), Defendants' Motion in Limine Regarding Anticipated Testimony from Deanna Johnson and Brief in Support (Dkt. # 115), and Defendants' Motion in Limine Regarding Polices/Manuals of Swift and Brief in Support (Dkt. # 120) are **granted** as stated in this Opinion and Order.

**IT IS FURTHER ORDERED** that Defendants' Omnibus Motion in Limine and Brief in Support (Dkt. # 113) and Defendants' Motion to Strike (Daubert), Motion in Limine and Brief in Support with Respect to Plaintiffs' Expert, Roger Allen (Dkt. # 119) are **granted in part** and **denied in part** as stated in this Opinion and Order.

**IT IS FURTHER ORDERED** that Defendants' Motion in Limine with Respect to Alleged Wrongful Acts of Defendant Sai Wai and Brief in Support (Dkt. # 116), Defendants' Motion in Limine Regarding Federal Motor Carrier Safety Regulations and Brief in Support (Dkt. # 122), and Defendants' Motion in Limine Regarding Log/Qualcomm Entries and Brief in Support (Dkt. 123) are **denied**.

**IT IS FURTHER ORDERED** that Defendants' Motion in Limine Regarding "Golden Rule" and "Reptile Theory" Arguments and Brief in Support (Dkt. # 117) is **moot**.

**DATED** this 7th day of August, 2019.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE